UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MONTE CLARK,

        Plaintiff,

                                                               Case Number 12-14574
v.                                                             Honorable Thomas L. Ludington

ERIC K. SHINSEKI,
SECRETARY OF DEPARTMENT
OF VETERANS AFFAIRS

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

      A federal employee alleging employment discrimination must exhaust his administrative remedies before seeking relief in this Court. Under 29 C.F.R. § 1614.106(b), the employee must file his complaint with the agency "within 15 days of receipt of the notice [of the right to file a discrimination complaint]."

      The plaintiff in this case did not meet this deadline. The notice was received in December 2011. The plaintiff's complaint, filed in May 2012, came too late. The plaintiff, moreover, acknowledges that he had actual notice of the defendant's decision in January 2012. While the first month's delay may be the sole fault of the plaintiff's lawyer, the next four months are not. Plaintiff did not timely exhaust his administrative remedies. And because he did not diligently pursue his claim, he is not entitled to equitable tolling. Accordingly, the complaint that the plaintiff has filed in this Court must be dismissed.

# I

## A

In September 2010, Plaintiff Monte Clark began working as food service worker in the canteen of the Aleda E. Lutz Veterans Affairs Medical Center ("VA hospital"). Compl. ¶¶ 4, 8, 11. Located in Saginaw, Michigan, the VA hospital is operated by the United States Department of Veterans Affairs (whose secretary is the named defendant in this case). *Id*. ¶ 4.

In January 2010, Plaintiff injured his hand "while dumping a grease pot into the grease container near the dumpster." *Id*. ¶ 12. He went to see a doctor. *Id*. ¶ 15. The doctor placed Plaintiff's arm in a sling, but did not put any restrictions on Plaintiff's ability to work. *Id*. Plaintiff returned to work. *See id*.

Three weeks later, Plaintiff went back to the doctor. Compl. ¶ 18. Diagnosing Plaintiff with "slight carpel tunnel syndrome and tenosynovistis," the doctor placed Plaintiff on "limited duty." *Id*. Restricted to working no more than four hour shifts, Plaintiff was also instructed to avoid "any tasks that would aggravate his injury." *Id*.

Plaintiff brought his doctor's restrictions to the canteen's manager, Karl Seidel. *Id*. ¶¶ 17, 20. Mr. Seidel, however, "refused to accept the paperwork." *Id*. ¶ 20. Plaintiff then contacted Jacqueline Hill. Compl. ¶¶ 21–22. (The complaint does not specify who Ms. Hill is or what she does.)

When Plaintiff reported to work on February 7, 2011, Mr. Seidel told Plaintiff "that he had received a phone call from Hill. Seidel told Plaintiff he would bring him a 'CA-2' form to fill out. A CA-2 form is an occupational disease form for reporting occupational diseases and minor injuries." *Id*. ¶ 23. Plaintiff completed the CA-2 form and was placed on restricted duty. *See id*. ¶¶ 28–29, 36.

**B**

On March 8, 2011, Plaintiff was told to see the chief of nutritional foods, Walter Brewer. *Id*. ¶ 36. (Who told Plaintiff to see Mr. Brewer is not identified in the complaint.)

When Plaintiff arrived, Mr. Brewer told Plaintiff that because of his restrictions Mr. Brewer "didn't want to put him to work." *Id*. A short time later, however, Mr. Brewer relented and told Plaintiff to clean the pots and pans. Compl. ¶ 36. Plaintiff responded that because of his injury it would take him twice as long to do this work. *Id*. Mr. Brewer replied that "the timing didn't matter so long as Plaintiff could do the pots and pans." *Id*.

Later that day, Mr. Brewer again changed his mind. *Id*. ¶ 37. He sent Plaintiff home, explaining "Plaintiff could not do pots and pans and that was around 10% of his job duties." *Id*. Plaintiff complied with Mr. Brewer's order. Compl. ¶ 37. But as Plaintiff was "on his way out of the building [he] talked to an employee in another area and informed him of his situation. The employee advised Plaintiff that he needed to go to Occupational Health before leaving. The employee also informed Plaintiff that he needed to inform Cheryl Owen" (the VA hospital's Equal Employment Opportunity Commission representative). *Id*.

Plaintiff went to see Ms. Owen, who "informed Plaintiff that his supervisor could not just send him [home] and force him to take Annual Leave. She advised Plaintiff that he should have been on Administrative Absence." *Id*. ¶ 40.

It is not clear whether Plaintiff was then placed on administrative absence. (The complaint does not say one way or another.) What is clear is that several months passed.

**C**

On June 10, 2011, "Plaintiff experienced increased pain in his hand. He notified Brewer of this and that it would be difficult for Plaintiff to continue to work." *Id*. ¶ 5   6.

Things did not improve. *See id*. ¶ 57. Three days later, Plaintiff experienced acute pain in his hand and called in [to] work to inform them that he was not going to be able to work." Compl. ¶ 57. He returned to his doctor, who opined "that Plaintiff's hand should have been better by now. Plaintiff responded that his supervisors forced him to perform full duties until March 2011." *Id*. ¶ 58.

The following month, "Plaintiff was put on Administrative Absence." *Id*. ¶ 59. (The reason Defendant gave for placing Plaintiff on administrative absence is not identified in the complaint.)

And on July 29, 2011, Plaintiff's employment was terminated. *Id*. ¶ 60. (Again, the reason Defendant gave for terminating Plaintiff's employment is not identified in the complaint.)

**D**

On August 26, 2011, Plaintiff contacted a Department of Veterans Affairs Office of Resolution Management equal employment opportunity counselor. *See* Def.'s Mot. to Dismiss Ex. 1; *see also* Pl.'s Resp. Br. 1. Plaintiff complained to the counselor that Plaintiff had been discriminated against on the basis of race and disability. Def.'s Mot. Exs. 1, 2. He also retained counsel, Mr. Roger Trerice. Pl.'s Resp. Br. 1.

Sometime later, the parties agreed to participate in Defendant's alternative dispute resolution program (specifically, mediation). *See* Pl.'s Resp. Ex. A. The mediation was originally scheduled for October 28, 2011. *Id*. One hour before the mediation was scheduled to begin, however, Plaintiff's attorney called and cancelled. *Id*.; *see also* Pl.'s Resp. Br. 1. Defendant rescheduled the mediation for November 18. Pl.'s Resp. Ex. A. Again, it was evidently cancelled about an hour before it was scheduled to begin. *See* Pl.'s Att'y Grievance Compl., *attached as* Pl's Resp. Ex. B.

On November 22, 2011, the equal employment opportunity counselor sent a letter to Plaintiff's counsel. Def.'s Mot. Ex. 1. "I am closing informal counseling on the matter your client presented to this office," the letter explained, cautioning: "If your client decides to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so." *Id*. at 1. Reiterating the 15 day deadline, the letter emphasized in boldfaced capital letters: "**If you decide to file a formal complaint, you must do so WITHIN FIFTEEN CALENDAR DAYS OF RECEIPT OF THIS NOTICE.**" *Id*. at 2.

E

Plaintiff's attorney received the notice on November 28, 2011. *See* Def.'s Mot. Ex. 3. Fifteen days passed. Then another 15. Then still more time. Then, sometime in early January, Plaintiff alleges, "Plaintiff called the Office of Personnel Management, only to find that his case was closed." Pl.'s Resp. Br. 2; *see also* Pl.'s Att'y Grievance Compl. 3 ("I called the Office of Personnel Management after the first week in January only to find out that my case was closed.").

Plaintiff further alleges that he "promptly went to Mr. Trerice's office concerning that issue. Trerice 'sounded upset' because of what [Plaintiff] had told him and informed him he would tell him when he had heard something." *Id*.

More time passed. Still, Plaintiff did not file a formal complaint. At some point (Plaintiff does not specify when), he again "met with Mr. Trerice regarding the status of his complaint." *Id*. At that meeting, Plaintiff alleges, he "asked Trerice how long he had to file charges against the VA hospital and Trerice replied '3 years.'" *Id*. at 2–3.

Plaintiff did not file a formal complaint with Defendant.

**F**

Instead, on April 24, 2012, Plaintiff filed a complaint against Mr. Trerice with the Michigan Attorney Grievance Commission.  Pl.'s Resp. Ex. B.  The attorney grievance complaint alleges:

> When I was terminated from my job (7/29/2011), Mr. Trerice informed me he had six charges so far that he had against my job. . . .
>
> I had a deadline to fill out forms concerning my complaint[.]  They were not met.
>
> There were two days that my job wanted to mediate.  Mr. Trerice informed me that we can listen, but if we were not satisfied, then we were going to sue.  Not in those words, but something of that nature.
>
> We were given two appointments.  The first one was cancelled by Mr. Trerice because of personal reasons.  We were rescheduled for another day, only to be cancelled within an hour of the mediation.  No explanation[,] no rescheduling.  I saw Mr. Trerice three more times.  Once in December where Mr. Mark Judd (also, my cousin) and myself saw Mr. Trerice.  Mr. Judd had a case concerning issues with school. . . .  I asked concerning my case and Mr. Trerice said we will wait until the next year because nothing is going to happen during the Christmas season.
>
> I called the Office of Personnel Management after the first week in January only to find out that my case was closed November 29. . . .
>
> I went to Mr. Trerice's office concerning that issue.  He sounded upset because of what I had told him, and told me he would call me when he heard something . . . .
>
> The last time I saw Mr. Trerice I had gotten upset because I am feeling that since it has been over a year and I haven't seen any progress concerning my case. . . .
>
> Mr. Trerice also informed me if I wanted to seek counsel elsewhere, he would understand. . . .
>
> Sir, I am writing because I have doubts about Mr. Trerice's interest in my case.  Since last year, the only information I know concerning my case was what I provided.  The only phone calls I would receive would be returned calls or call[s] to cancel appointments.  I feel that for some reason Mr. Trerice is just stringing me along until I won't be able to file charges against my former employer.

*Id*. at 2–5.

**G**

Finally, in May 2012 — about five and a half months after the notice of the right to file a formal complaint was received by Plaintiff's attorney — Plaintiff filed a formal complaint of employment discrimination with Defendant. *See* Def.'s Mot. Ex. 2 (attaching formal complaint).

The complaint had four claims. The first was "misrepresentation from lawyer." *Id*. at 1. Plaintiff wrote: "Lawyer representation misled me. Was informed my complaints was not my lawyer[']s field of profession. Lawyer did not represent me when timely deadlines were not met." *Id*.

Plaintiff's second claim was "race." *Id*. at 2. Plaintiff wrote: "I feel race (being black). I notified my supervisor of my injury. My supervisor talked to me in an intimidating manner." *Id*.

Plaintiff's third claim was "retaliation." Def.'s Mot. Ex. 2, at 2. Plaintiff explained: "Because of me reporting my injury outside of the department, my supervisor tried to talk to me to go into his office by myself. When I asked him could I have someone else present, he disappeared for one week." *Id*.

Plaintiff's fourth and final claim was again "race." *Id*. Plaintiff wrote: "My lawyer's associate state that they felt that I was racially discriminated upon the day I personally turned in my unemployment letter." *Id*.

**H**

On July 13, 2012, Defendant denied Plaintiff's complaint. *See* Def.'s Mot. Ex. 3 (attaching notice of final agency decision). The notice of denial explained:

> The informal counseling process was completed on November 22, 2011, when your prior attorney representative was issued the Notice of Right to File a Discrimination Complaint which was received on November 28, 2011. Documentation shows that your formal complaint of discrimination was mailed to this office on May 7, 2012. To have been timely filed, your complaint should have been received in this office [no later than] December 13, 2011.

> On July 3, 2012, this office received a copy of your facility LMS training records that confirm your receipt of EEO related trainings; wherein EEOC time restrictions were discussed . . . .  Also, your facility EEO Program Manager provided further confirmation that you completed New Employee Orientation on December 28, 2009, wherein you were issued the facility Handbook that discussed EEOC time limits; and you viewed a PowerPoint EEO presentation wherein EEOC timeframes and limits were presented.
>
> On May 9, 2012, this office received correspondence from you that stated your delay in filing a formal complaint was due to former misrepresentation by your prior attorney representative.  The information that you provided this office does not warrant further tolling or waiver of the 15 day time limit to file a formal complaint.

*Id*. at 5 (emphasis omitted) (paragraph breaks supplied).

This litigation ensued.  On October 15, 2012, Plaintiff (represented by new counsel) filed suit in this Court.  The single count of the complaint alleges disability discrimination in violation of the Rehabilitation Act of 1973.  Specifically, it alleges that Plaintiff's hand injury constitutes a "handicap," that he requested a reasonable accommodation for that handicap, and that "Defendant decided to terminate his employment rather than accommodate his restrictions." Compl. ¶ 67.

Defendant moves to dismiss the complaint because Plaintiff did not exhaust his administrative remedies.

## II

If a plaintiff has not exhausted his administrative remedies, the Sixth Circuit instructs, "the court should dismiss the action pursuant to Rule 12(b)(6)." *Mitchell v. Chapman*, 343 F.3d 811, 821 n.10 (6th Cir. 2003) (citing Fed. R. Civ. P. 12(b)(6)).

In evaluating a motion to dismiss, well pleaded facts in the complaint are assumed to be true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).[1]  But, the Supreme Court cautions, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

Here, the complaint alleges: "Plaintiff has exhausted all administrative remedies." Compl. ¶ 61.  For the following reasons, this legal conclusion is incorrect.

### III

### A

"When Congress authorized federal employees to sue the federal government for violation of the civil rights laws," the Sixth Circuit observes, "it conditioned such authorization on the plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations."  *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (quotation marks omitted) (quoting *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)); *see Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984) (concluding that claims under the Rehabilitation Act require administrative exhaustion).

Administrative exhaustion requirements for a federal employee who believe that he was discriminated against are established in pertinent part by 29 C.F.R. §§ 1614.105–.106.

### 1

Section 1614.105, "Pre-Complaint Processing," establishes several requirements that an employee must satisfy before filing a complaint.  Paragraph (a) provides: "Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."  § 1614.105(a).

---

[1] Documents referenced in the complaint that are central to the plaintiff's claim are also considered.  *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 659 n.6 (6th Cir. 2005) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

"At the initial counseling session," paragraph (b)(1) continues, "Counselors must advise individuals in writing of their rights and responsibilities, including the right to request a hearing or an immediate final decision." § 1614.105(b)(1).

Paragraph (b)(2), in turn, requires that counselors "advise aggrieved persons that, where the agency agrees to offer ADR in the particular case, they may choose between participation in the alternative dispute resolution program and the counseling activities provided for in paragraph (c) of this section." § 1614.105(b)(2).

Paragraph (c) provides that those counseling activities will be conducted "in accordance with instructions contained in Commission Management Directives." § 1614.105(c).

Here, Defendant agreed to offer Plaintiff the chance to participate in the alternative dispute resolution program (in accordance with § 1614.105(b)(2)). And Plaintiff chose to pursue this program instead of the counseling activities provided for in § 1614.105(c).

2

Paragraph (d) establishes (in part) the time requirements for the counselor to conclude the pre-complaint process, providing:

> Unless the aggrieved person agrees to a longer counseling period under paragraph (e) of this section, or the aggrieved person chooses an alternative dispute resolution procedure in accordance with paragraph (b)(2) of this section, the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling. If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint.

§ 1614.105(d). It bears reiterating (for reasons that will become plain below) that the counselor must conclude the process within 30 days, unless the aggrieved person agrees to a longer period or "chooses an alternative dispute resolution procedure in accordance with paragraph (b)(2)," like in this case. *Id*.

"Where the aggrieved person chooses to participate in an alternative dispute resolution procedure in accordance with paragraph (b)(2) of this section," paragraph (f) provides, "the pre-complaint processing period shall be 90 days. If the claim has not been resolved before the 90th day, the notice described in paragraph (d) of this section shall be issued." § 1614.105(f).

### 3

Section 1614.106, titled "Individual Complaints," establishes the time requirements for within which an aggrieved person must file a complaint. Paragraph (b) provides: "A complaint must be filed within 15 days of receipt of the notice required by § 1614.105 (d), (e) or (f)." § 1614.106(b).

### 4

To summarize, when an aggrieved person chooses an alternative dispute resolution procedure, within 90 days of the initial contact the government must either resolve the matter or issue a notice to the aggrieved person of the person's right to file a discrimination complaint. If the aggrieved person is notified of his right to sue, his complaint must be filed within 15 days of receipt of the notice.

Here, Plaintiff contacted the counselor on August 26, 2011. Ninety days later was November 25, 2011.[2] Defendant sent Plaintiff a letter notifying him of his right to file a discrimination complaint on November 22, 2011. Issued 87 days after the initial contact, the letter was on time.

Plaintiff's complaint, however, was not. Notice of his right to sue was received on November 28, 2011. Fifteen days later was December 13, 2011. Plaintiff did not file his complaint with Defendant by December 13. In fact, he did not file it for nearly five months.

---

[2] *See* 29 C.F.R. § 1614.604(d) ("The first day counted shall be the day after the event from which the time period begins to run and the last day of the period shall be included, unless it falls on a Saturday, Sunday or Federal holiday, in which case the period shall be extended to include the next business day.").

Filed on May 9, 2012, Plaintiff's complaint was late. And because it was not timely, Plaintiff did not exhaust his administrative remedies. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (discussed below).

The case must be dismissed pursuant to Rule 12(b)(6).

### B

Against this conclusion, Plaintiff makes two arguments. Neither has merit.

### 1

First, Plaintiff asserts, Defendant waived the administrative exhaustion requirement because Defendant did not timely complete the pre-complaint process. Plaintiff writes: "Defendant seeks dismissal of Plaintiff['s] claim because he failed to abide by a 15 day filing requirement contained in the Code of Federal Regulations for complaints such as his. Defendant, however, failed to provide the notice required by the rule in the time required by the rule and, in so doing, abandoned the argument." Pl.'s Resp. 1 (emphasis omitted).

Relying on 29 C.F.R. § 1614.105(d), Plaintiff elaborates: "Plaintiff had made his informal complaint to the counselor on August 26, 2011. By the Rule, the notice of the right to file a formal complaint (and of the 15 day limitations period thereon) should have been sent to him within 30 days. November 22, 2011 is long after the 30 day mark required by the Rule. Defendant, therefore, has failed to abide by the strict notice provisions of the Rule and may not seek protection of the 15 day requirement." Pl.'s Resp. Br. 4 (emphasis omitted) (citing § 1614.105(d)).

Plaintiff's argument lacks merit. As noted, § 1614.105(d) provides that the counselor must conclude the process within 30 days — unless the aggrieved person agrees to a longer period or "chooses an alternative dispute resolution procedure," like in this case.

"Where the aggrieved person chooses to participate in an alternative dispute resolution procedure," paragraph (f) provides, "the pre-complaint processing period shall be 90 days. If the claim has not been resolved before the 90th day, the notice described in paragraph (d) of this section shall be issued." § 1614.105(f).

Here, as noted, the notice was issued 87 days after Plaintiff initially contacted the counselor. The notice was timely. Defendant has not waived its administrative exhaustion defense.

2

Next, Plaintiff asserts that the 15 day period should be equitably tolled because the missed deadline is his attorney's fault, not his own. Plaintiff writes: "Plaintiff's counsel was largely at fault for failing to file a formal complaint within 15 days of the notice. Plaintiff used reasonable diligence in pursuing his rights, but his attorney failed to properly follow through on his claims." Pl.'s Resp. 1. Plaintiff elaborates:

> Plaintiff did not have knowledge that he must make a formal complaint within 15 days. . . . This is a case of attorney misconduct and Plaintiff should be entitled to equitable tolling as a result. However, we may also view this matter as misconduct on the part of the Defendants [sic], leading to confusion as to whether a formal complaint was necessary at this time. The letter in question was sent on November 22, 2011. Plaintiff had been scheduled for a mediation session on November 18, 2011. There is, clearly, some confusion as to Defendants' [sic] intent. Did they want to reschedule the mediation, or just go forward with a formal complaint.
>
> This confusion is further warranted by the Defendant's failure to adhere to the rule pertaining to the 15 day notice provision in question. As noted above, the Rule requires that the notice letter in question be transmitted within 30 days of Plaintiff's filing the initial complaint . . . . A colorable argument could be made, from the facts on the record, that the Defendant attempted to confuse Plaintiff and his counsel by first failing to send the notice while the parties were working towards mediation, then sending the notice after the mediation was postponed.

Pl.'s Resp. Br. 6–7 (paragraph breaks omitted). Plaintiff also elaborates on his diligence, writing:

> Plaintiff hired an attorney to represent him in his complaint. Plaintiff scheduled mediation sessions. Plaintiff specifically asked his attorney how long he had to file his claims, and was told "3 years." Once Plaintiff found out that his attorney had failed to meet the 15 day deadline in the letter, Plaintiff terminated his attorney's representation, filed a complaint with the AGC, and filed a formal complaint in his own name with the offending agency.

*Id.* at 8. Plaintiff's assertions, contradicted by the record, lack merit.

First, Plaintiff may not have known that he was required to make a formal complaint within 15 days. But he should have. When he was hired, Plaintiff received "EEO related trainings" discussing the time limits within which to bring a claim. Def.'s Mot. Ex. 3, at 5. He also viewed "a PowerPoint EEO presentation" discussing those time limits. *Id*. And he received an employee handbook discussing those limits. *See id*. In sum, whether Plaintiff actually knew that he had 15 days to file a complaint, he should have.

Next, Plaintiff may be correct that "attorney misconduct" is to blame for the missed filing deadline. Initially. But Plaintiff himself is to blame for how badly missed the deadline was. As noted, the deadline expired December 13, 2011. Plaintiff filed his formal complaint about five months later. And while the first month's delay may be solely attributable to Plaintiff's lawyer's neglect, the next four months are not.

That is, Plaintiff acknowledges that he learned in early January 2011 that Defendant had rendered a decision on his informal complaint. *See* Pl.'s Att'y Grievance Compl. 3 ("I called the Office of Personnel Management after the first week in January only to find out that my case was closed."). Yet Plaintiff did not file his formal complaint until May 9, 2012. Although Plaintiff's neglect of the case during the first month may be excusable, his neglect over the next four is not.

Because Plaintiff did not exercise reasonable diligence in attempting to preserve his legal rights, he is not entitled to equitable tolling.

Similarly without merit is Plaintiff's contention that Defendant is guilty of "misconduct" and caused "confusion as to whether a formal complaint was necessary." Pl.'s Resp. Br. 6 (as noted, Plaintiff writes: "There is, clearly, some confusion as to Defendants' [sic] intent. Did they want to reschedule the mediation, or just go forward with a formal complaint.").

The mediation scheduled for November 18, 2011 was cancelled — not rescheduled. Four days letter, the equal employment opportunity counselor sent a letter to Plaintiff's counsel. Def.'s Mot. Ex. 1. "I am closing informal counseling on the matter your client presented to this office," the letter explained, cautioning: "If your client decides to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so." *Id*. at 1. Reiterating the 15 day deadline, the letter emphasized in boldfaced capital letters: "**If you decide to file a formal complaint, you must do so WITHIN FIFTEEN CALENDAR DAYS OF RECEIPT OF THIS NOTICE.**" *Id*. at 2. Defendant provided Plaintiff (through his attorney) with an unequivocal statement that a complaint was necessary to continue the process. Any "confusion" cannot reasonably be attributed to Defendant.

Also without merit is Plaintiff's related argument that "[t]his confusion is further warranted by the Defendant's failure to adhere to the rule pertaining to the 15 day notice provision in question. A colorable argument could be made, from the facts on the record, that the Defendant attempted to confuse Plaintiff and his counsel by first failing to send the notice while the parties were working towards mediation, then sending the notice after the mediation was postponed." Pl.'s Resp. Br. 7.

As noted, Plaintiff has misconstrued Defendant's deadline for notifying Plaintiff of his right to file a formal complaint. Defendant's deadline was not 15 days — but 90. § 1614.105(d), (f) (quoted above). Under § 1614.105(f), moreover, Defendant was required to wait to see whether the claim could be resolved by mediating the dispute before sending the notice. Sending the notice while the parties were working towards mediation would defeat this purpose.

And finally, for the reasons discussed above, Plaintiff did not diligently pursue his claim. To reiterate, although Plaintiff's neglect of the case during the first month may be excusable, the neglect over the next four is not. Plaintiff is not entitled to equitable tolling.

**3**

Reinforcing this conclusion is the Supreme Court's decision in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990). That case began when the plaintiff was fired by the Veterans Administration. *Id*. at 91. Responding, the plaintiff "filed a complaint with the VA, alleging that the VA had unlawfully discharged him on the basis of his race and physical disability." *Id*. The Equal Employment Opportunity Commission affirmed the VA's decision. *Id*. The EEOC also sent a letter to the plaintiff and his attorney notifying them that the plaintiff had a right to file a complaint within 30 days of receipt of the letter. *Id*. The letter was sent on March 19, 1987. 489 U.S. at 91. But the plaintiff did not receive the letter "until April 7, 1987, and the letter to his attorney arrived at the attorney's office on March 23, 1987, while the attorney was out of the country. The attorney did not learn of the EEOC's action until his return on April 10, 1987." *Id*. The plaintiff then filed suit "on May 6, 1987, 44 days after the EEOC notice was received at his attorney's office, but 29 days after the date on which he claimed he received the letter." *Id*. The district court dismissed the plaintiff's suit as untimely. *Id*. The Fifth Circuit affirmed. *Id*.

The plaintiff then appealed to the Supreme Court, asserting that "the clock does not begin until the claimant himself has notice of his right to sue," or, alternatively, that equitable tolling should apply. 498 U.S. at 91. The Court rejected the plaintiff's assertions and affirmed the dismissal of the suit. *Id*. at 96. Writing for the Court, Chief Justice Rehnquist first explained:

> [The statute] requires only that the EEOC notification letter be "received"; it does not specify receipt by the claimant rather than by the claimant's designated representative. There is no question but that petitioner appeared by his attorney in the EEOC proceeding. Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id*. at 91 (quotation marks omitted) (quoting 42 U.S.C. § 2000e-16(c); *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). Turning to the plaintiff's equitable tolling argument, Chief Justice Rehnquist continued:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. . . .
>
> Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

*Irwin*, 498 U.S. at 96 (citations and footnotes omitted) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).

Here, like in *Irwin*, the rule requires only that the notification letter be "received"; it does not specify receipt by the aggrieved party rather than by the aggrieved party's designated representative. *See* 29 C.F.R. § 1614.106(b) (quoted above). Like in *Irwin*, Plaintiff is bound by the acts of his lawyer.

Also like in *Irwin*, Plaintiff is not entitled to equitable tolling. Indeed, Plaintiff was less diligent than the plaintiff in *Irwin*. There, the gentleman had 30 days to file a complaint — and he filed it 29 days after receiving actual notice of his right to do so. Here, Plaintiff had 15 days to file a complaint — and the undisputed evidence is that he did not file it within 15 days of after receiving actual notice of Defendant's decision on his informal complaint. He waited four months. The Supreme Court cautions that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96. Here, Plaintiff's delay was not excusable. His complaint must be dismissed.

## IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss (ECF No. 4) is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

> s/Thomas L. Ludington
> THOMAS L. LUDINGTON
> United States District Judge

Dated: March 11, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 11, 2013.

> s/Tracy A. Jacobs
> TRACY A. JACOBS

---